IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EVETTE S. FREEMAN,                  )
                                    )
          Plaintiff,                )    CASE NO. 2:09-cv-270-MEF
v.                                  )
                                    )
KOCH FOODS OF ALABAMA,              )    (WO – PUBLISH)
                                    )
          Defendant.                )

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on three motions.  First, Defendant Koch Foods of

Alabama ("Koch Foods") filed a Motion for Partial Judgment on the Pleadings, (Doc. #

40), on May 3, 2010.  That same day, Koch Foods also filed a Motion for Summary

Judgment.  (Doc. # 41).  Finally, Plaintiff Evette S. Freeman ("Freeman") filed a

Response to Show Cause Order and Alternative Motion for Leave to Amend Her

Complaint, (Doc. # 64), on December 30, 2010.  The instant action involves the following

allegations: (1) retaliation and constructive discharge under the Family and Medical

Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq*; (2) disability discrimination,

harassment, retaliation, and constructive discharge under the Americans with Disabilities

Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101 *et seq*; (3) and race

discrimination, retaliation, and constructive discharge under both 42 U.S.C. § 1981 ("§

1981") and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C.

§§ 2000e *et seq*.[1]  After careful consideration of the arguments of counsel and the record as a whole, the Court finds that the motion for leave to amend the complaint, (Doc. # 64), is due to be GRANTED in part and DENIED in part, the Motion for Partial Judgment on the Pleadings, (Doc. # 40), is due to be GRANTED in part and DENIED in part, and the Motion for Summary Judgment, (Doc. # 41), is due to be GRANTED.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 2000e-5(f)(3).  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

## FACTS AND PROCEDURAL HISTORY

### I. Facts

Freeman is an African-American female who began working for Sylvest Farms as an Accounts Receivable Clerk in 1999.  (Doc. # 49, at 2, ¶¶ 1–2; Doc. # 42, at 3, ¶ 2).  In May of 2003, she earned a bachelors degree in human resource management from Faulkner University.  (Doc. # 49, at 3, ¶ 5).  In 2005 and 2006, Freeman took classes towards obtaining a master's degree in business, with a concentration in accounting, from Troy University.  *Id.* ¶ 6.  She alleges that she took accounting classes "because she had been denied multiple positions" at work.  *Id.* ¶ 7.

Koch Foods, which is in the business of poultry processing and packaging,

_____

[1]  Freeman also alleges gender discrimination, in violation of Title VII, in the first numbered paragraph of her complaint.  (Doc. # 1 at 1, ¶ 1).

2

purchased Sylvest Farms' assets on June 1, 2006.  (Doc. # 42, at 3, ¶¶ 1–2).  While still working for Sylvest Farms, Freeman had been transferred into the purchasing department where she handled the paperwork for items coming into the facility.  (Doc. # 43 Ex. 2, Pl.'s Dep., 84:9–12).  Prior to June 1, 2006, she was transferred back to the Accounts Receivable Clerk position.  *Id.*  After the purchase, Freeman continued to work as an Accounts Receivable Clerk for Koch Foods with Debra Matthews ("Matthews") as her manager.  (Doc. # 42, at 3–4, ¶ 5; Doc. # 49, at 3, ¶¶ 8–9).  The Accounts Receivable area was part of the Accounting Department, which was supervised by the Controller, Lyman Campbell ("Campbell").   (Doc. # 42, at 3–4, ¶ 5; Doc. # 49, at 3, ¶¶ 10–11).

Koch Foods maintains an Equal Employment Opportunity and Harassment Policy ("EEO Policy") prohibiting discrimination based on, inter alia, race and disability.  (Doc. # 42, at 3, ¶ 3).  "The EEO Policy provides that in the event an employee feels she is being harassed or discriminated against she should report that to the Complex Manager, the Complex [Human Resources] Manager, or the Corporate Director of Human Resources."  *Id.* ¶ 14.  Freeman received and signed a copy of the EEO Policy.  *Id.* ¶ 13.

### A.  The HR Positions

After receiving her bachelor's degree in human resources management, Freeman claims that she repeatedly asked Campbell for a position in the Human Resources ("HR") Department over the next several years.  (Doc. # 1, at 2–3, ¶ 9; Doc. # 49, at 7, ¶ 39).  She claims that Campbell denied her requests each time, telling her that she lacked experience

and that the position required a Spanish speaker.  (Doc. # 1, at 3, ¶ 10).  However, Freeman contends that there were employees in HR who did not speak Spanish and that two different HR Supervisors—Cynthia Thomas and LaShawn Collins ("Collins")—told her that the position did not require knowledge of the Spanish language.  *Id.* ¶¶ 12–13.

According to Freeman, Collins spoke to Jim Jones ("Jones"), an Administrative HR Manager, in order to support Freeman's transfer to HR.  Jones allegedly informed Freeman that "he had only heard good things about her work performance, and would discuss the matter with [Campbell]."  However, Jones later rejected her transfer request and refused to provide her with a reason why.  *Id.* ¶ 16.  Freeman also claims that she spoke to another HR manager, Don Hillburn ("Hillburn"), who told her "that he would move her to HR, but that she would have to speak to [Campbell] about it."  (Doc. # 49, at 7, ¶¶ 42–43).  According to Freeman, a third HR manager, Maritza Gamble ("Gamble"), also spoke to her about obtaining an HR position and told her that she had no problem with the transfer but needed to speak to Campbell prior to making any offers.  (Doc. # 1, at 3, ¶ 17; Doc. # 49, at 7, ¶¶ 44–45).

Freeman claims that Gamble spoke to Campbell, who told her to offer Freeman a night-shift position knowing that she would decline the offer because of her children.  (Doc. # 1, at 3, ¶ 18; Doc. # 49, at 7–8, ¶¶ 46–47).  She further alleges that she "approached [Campbell] about his statements, and he stated that she was not one of 'those' people, and that he did not understand why she wanted a transfer."  (Doc. # 1, at

4

4, ¶ 19). Campbell allegedly asked her why she wanted to transfer out of the Accounting Department. *Id.* ¶ 20. Freeman states that she "informed him that not only was she carrying the bulk of the workload in the department, but that conversations in the department usually lead to comments about black ethnicity." *Id.* Her manager had allegedly told her that some co-workers had problems working with African-Americans. *Id.* ¶ 21. However, she claims that Campbell failed to respond to her concerns.

Koch Foods admits that some employees in HR do not speak Spanish, but denies the remaining allegations. (Doc. # 6, at 2–3, ¶¶ 9–10, 12–22). Koch Foods claims that Campbell "never told anyone in [HR] to offer [Freeman] a position in [HR]." (Doc. # 42, at 9, ¶ 32). Furthermore, Koch Foods points out that, when Freeman began allegedly requesting transfers to HR in 2003, this was before Koch Foods owned the Montgomery facility where Freeman worked. *Id.* at 10, ¶ 38. Finally, Koch Foods contends that "Freeman is unable to identify any of the dates when she asked for a position in [HR], who received the positions she wanted, or the race of any individuals who received the positions [and that] Freeman cannot identify whether the positions she was seeking in [HR] were available while she was employed by Sylvest Farms or Koch Foods." *Id.* ¶ 41.

### B. Freeman's Diagnosis and Medical Leave

In July of 2006, Freeman was diagnosed with breast cancer. (Doc. # 42, at 4, ¶ 7; Doc. # 49, at 3, ¶ 12). Upon learning her of her diagnosis, Freeman alleges that she informed Matthews of her illness and her need to take FMLA leave. (Doc. # 49, at 4, ¶

5

14).  Because Freeman had not yet informed her family of the illness, she asked for her

condition to be kept confidential.  *Id.* ¶ 15.  She claims that Matthews "sent out a

company-wide email informing Koch [Foods'] employees of [Freeman's] breast cancer

diagnosis."  *Id.* ¶ 16.  Freeman learned of the alleged email from another Koch Foods

employee who worked near Bainbridge, Georgia.  *Id.* ¶ 17.  Koch Foods denies that such

an email was sent.  (Doc. # 6, at 4, ¶ 23).  In August of 2006, Freeman requested FMLA

leave in order to receive treatment for her breast cancer.  (Doc. # 42, at 4, ¶ 7; Doc. # 49,

at 3, ¶ 13).  Koch Foods granted her request and Freeman began her FMLA leave that

same month.  (Doc. # 42, at 4, ¶ 7; Doc. # 49, at 3, ¶ 13).

### C.  The Accounts Receivable and Accounts Payable Positions

While Freeman was on medical leave, Koch Foods hired Tiffany Harden

("Harden"), a white female, to work in Accounts Payable.  (Doc. # 43 Ex. 2, Pl.'s Dep.

106:1–11).  Koch Foods also hired Lorraine Haats ("Haats"), a white female, on

September 26, 2006 to work in the Accounting Department.  (Doc. # 42, at 5, ¶ 13; Doc. #

49, at 4, ¶ 18).  Haats initially worked in the Accounts Receivable area and performed

Freeman's duties while she was on FMLA leave.  (Doc. # 42, at 5, ¶ 15; Doc. # 49, at 4,

¶¶ 18–19).  Freeman claims that Haats was paid more than her while performing the same

duties as an Accounts Receivable clerk.  (Doc. # 49, at 4, ¶ 20).  However, Koch Foods

asserts that, prior to being hired, Haats "had experience . . . in accounting and

bookkeeping and had worked as an Office Manager, Full Charge Bookkeeper, and

6

Accounting Assistant." (Doc. # 42, at 5, ¶ 14) and that her "pay was based on her skills and experiences compared to other Koch Foods [sic] employees, including Freeman." (Doc. # 42, at 5–6, ¶¶ 14, 17). It further claims that Haats was also training for the Accounts Payable position while working in Accounts Receivable. *Id.* at 6, ¶ 19 ("During Freeman's FMLA leave, Ms. Haats was training for an Accounts Payable job, and the plan was for her to take the job of another employee, Morgan Gavin, in Accounts Payable."). Koch Foods contends that the "plan was also to use [Haats] for special projects and to move her into Accounts Payable. The intention the entire time was for [Haats] to be moved into the Accounts Payable area." *Id.* at 5–6, ¶¶ 15–16.

Freeman returned from leave in February of 2007. (Doc. # 42, at 4, ¶ 8; Doc. # 49, at 4–5, ¶ 21). Rather than being returned to her position as an Accounts Receivable Clerk, she was given a position in the Payroll and Benefits area where her duties consisted of mailing out employees' benefits information. (Doc. # 42, at 6, ¶ 21; Doc. # 49, at 4–5, ¶¶ 21–22). Koch Foods contends that Freeman was not immediately returned to her Accounts Receivable position because Campbell had been informed that the position might be transferred to an out-of-state plant. (Doc. # 42, at 16) (citing Doc. # 43 Ex. 1, Campbell Decl. ¶ 12). Koch Foods further alleges—and Freeman does not dispute—that Freeman was paid the same as she was before she took leave. (Doc. # 42, at 6, ¶ 22).

Later, Freeman requested to be considered for another Accounts Payable position,

which she claims "consisted of substantially similar duties to those which [she] had performed in Accounts Receivable."  (Doc. # 49, at 5, ¶¶ 23, 27).  Freemen alleges that when she made the request for the Accounts Payable position, Campbell—the Controller for the Accounting Department—"scoffed at the idea of [her] making such a request so soon after taking protected leave."  *Id.* ¶ 25.  She also contends that Campbell "told [her] she was asking for a raise because she was buying a house where the 'rich white people' live."  *Id.* ¶ 26.  However, Plaintiff also admits that Koch Foods had already given Haats the Accounts Payable position before she had spoken to Campbell about the position.  (Doc. # 43 Ex. 2, Pl.'s Dep. 144:21–23, 145:1–3).  Additionally, Koch Foods claims that the plan from Haats' initial hiring was to move her into the Accounts Payable position.  (Doc. # 42, at 5–6, ¶¶ 15–16, 19).[2]  When Haats moved to Accounts Payable, Freeman was transferred back to her previous position in Accounts Receivable.  (Doc. # 42, at 7, ¶ 25; Doc. # 49, at 5, ¶ 28).  Freeman also claims that she requested to be considered for a Receiving Clerk position, for which she had previously performed the duties.  (Doc. 49, at 7, ¶ 40).  However, the position was given to Connie Little, a white female.  *Id.* ¶ 41.

### D.  The Benefits and Payroll Clerk Position

Freeman also claims that Campbell spoke to her several times about a position in benefits administration that Koch Foods was going to create.  She states that he told her

---

[2]  Koch Foods did not immediately transfer Haats to the Accounts Payable position.  *Id.* at 7, ¶ 24.  Instead, Koch Foods kept Haats in the Accounts Receivable position until March of 2007, when the man whom Haats was being trained to replace resigned.  *Id.* ¶ 25.

that the position "consisted of the same duties which [she] had performed upon returning to Koch Foods after taking medical leave." (Doc. # 49, at 5–6, ¶¶ 29–30) (citing Doc. # 43 Ex. 2, Pl.'s Dep. 99:9–13). She also claims that he told her "that when he was given permission to fill the position permanently, she would hire into the job on a permanent basis." (Doc. # 1, at 5, ¶ 32). Koch Foods, on the other hand, denies that Campbell promised Freeman any new position in benefits. (Doc. # 6, at 4, ¶ 31). Rather, Koch Foods claims that, in April of 2007, it created a new position because it was buying two complexes in North Alabama. (Doc. # 42, at 7, ¶ 26). The new position was called the Benefits and Payroll Clerk and "involved processing payroll and benefits for 700 to 800 additional employees." *Id.* at 8, ¶ 28. Freeman admits that she did not know what the job duties were for this new Benefits and Payroll Clerk position. (Doc. # 43 Ex. 2, Pl.'s Dep. 101:18–21). Finally, Koch Foods contends that when the position was filled, "Freeman had no experience in the areas of payroll and benefits administration." *Id.* at 7, ¶ 27.

Erica Banker—the Payroll and Benefits Manager at Koch Foods—and Campbell, interviewed Renee Nichols ("Nichols"), a white female, for the Payroll and Benefits Clerk position. *Id.* Koch Foods claims that Nichols had prior work experience in the payroll and benefits area and also worked as a bookkeeper. *Id.* at 8, ¶ 29. Freeman contends that Nichols had experience in payroll but not benefits and that Freeman was at least "equally qualified for the position" because she "had gained experience in benefits." (Doc. # 49, at 6, ¶¶ 32–33). However, Koch Foods claims that Campbell considered the

9

resumés of employees in the Accounting Department, including Freeman, and determined that she was not qualified for the position.  (Doc. # 42, at 8, ¶ 30).  In the end, Nichols was hired by Koch Foods to fill the new position.  *Id.*  Koch Foods claims that she was paid "based on her skills and experience" and that Freeman is unaware of whether the Benefits and Payroll Clerk position would have paid her more.  *Id.* ¶¶ 29–30.

### E.  The Moving of Freeman's Belongings

At the time Nichols was hired to be the Benefits and Payroll Clerk, Freeman was on vacation.  (Doc. # 42, at 8, ¶ 31; Doc. # 49, at 34, ¶ 35).  Nichols was to occupy the desk occupied by Freeman, so another employee cleared out Freeman's belongings.  (Doc. # 42, at 8, ¶ 31; Doc. # 49, at 6, ¶ 36).  Freeman claims that "when [she] returned from vacation, she found that her belongings had been removed from her desk and scattered on top of an adjacent desk."  (Doc. # 49, at 6, ¶ 36).  She contends that "[w]hen Alecia Hollon, a white female, had moved desks, she had been allowed to clean out her own desk."  *Id.* ¶ 38.  She also alleges that when she complained to Campbell, "he told her that he didn't have to ask 'her a damn thing about nothing.'"  *Id.* ¶ 37.  Koch Foods, on the other hand, points out that Freeman admitted that Campbell did not make any derogatory comments about her disability.  *Id.* at 12, ¶ 52 (citing Doc. # 43 Ex. 2, Pl.'s Dep., 217:20–23, 218:1).  Indeed, Koch Foods contends that Freeman admitted that Campbell never made any derogatory comments about African-Americans either.  *Id.* at 9, ¶ 34 (citing Doc. # 43 Ex. 2, Pl.'s Dep., 170:17–20, 217:20–23, 219:1).  Koch Foods also

claims that Freeman never reported these actions to the appropriate persons at Koch

Foods identified by the EEO Policy.  *Id.* at 12, ¶ 51.

### E.  The EEOC Charge

On June 28, 2007, Freeman filed a charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC").  (Doc. # 42, at 10, ¶ 42; Doc. # 49, at

48, ¶ 48).  On the EEOC charge, Freeman checked the boxes for "RACE" and

"DISABILITY" as the reasons why she believed she was being discriminated against.

(Doc. # 1 Ex. 1).  However, she did not check the "CONTINUING ACTION" box, which

indicates that the discriminatory conduct is on-going, or the "RETALIATION" box.

When asked to describe the particulars of her discrimination charge, Freeman wrote:

> I am a Black female and I had held the position of accounts receivable
> for at least eight years.  I was on an approved medical leave of absence during
> the period [of] August 2006 until February 5, 2007.  Upon my return to work
> from a leave of absence associated with my disability, I was denied the
> opportunity to apply and be considered for the positions of receiving clerk,
> accounts payable and benefits.  Additionally, the White female selected to fill
> the position I previously held is being paid at a higher rate than what I was
> paid.  I brought this to the attention of [Lyman] Campbell.  Additionally, I
> have been removed from the work area previously assigned to me while on
> vacation.
> I believe I was paid less wages and denied positions because of my
> race, Black, in violation of Title VII . . . .   I also believe that I was denied
> these positions because of my disability in violation of the [ADA].

*Id.*

Freeman claims that she was retaliated against for filing the EEOC charge.

Specifically, she contends that Campbell told her supervisor, Matthews, and her co-

11

worker, Haats, that they were not to speak to her.  (Doc. # 49, at 8, ¶ 50).  Koch Foods

denies that Campbell ever told Matthews or Haats not to speak to Freeman.  (Doc. # 42, at

9, ¶ 33).  Freeman also alleges that she was denied an HR position because she filed the

EEOC charge and that she learned of this when the HR Manager offered her a position

but told her that she had to drop her charge.  *Id.* at 11, ¶ 43 (citing Doc. # 43 Ex. 2, Pl.'s

Dep., 47:8–10).  Koch Foods contends that the requested transfer would have resulted in

Freeman being in a clerical position in which she would have been compensated at a

lower hourly rate, thus decreasing her salary.  *Id.* ¶ 44.  Koch Foods further points out that

Freeman testified that the "refusal to provide her a lesser paying job would not have

prevented her from submitting another EEOC charge" and that she "did not believe her

disability or her FMLA leave prevented her from obtaining any of the [HR] positions."

*Id.* ¶¶ 45–46.

### F.  Freeman's Resignation

Freeman further claims that she spoke to her supervisor, Matthews, "about the

intense stress she was under as a result of the discrimination to which she was subjected."

(Doc. # 49, at 8, ¶ 51).  She contends that Matthews told her to go ahead and put in her

two-weeks notice.  *Id.* ¶ 52.  On March 26, 2008, Freeman resigned from her employment

with Koch Foods.  (Doc. # 42, at 9, ¶ 35; Doc. # 49, at 8, ¶ 53).  After resigning from

Koch Foods, Freemen began working at Nucor Steel in April of 2008.  (Doc. # 42, at 9, ¶

36) (citing Doc. # 43 Ex. 2, Pl.'s Dep., 47:8–10).  Koch Foods claims that one of the

reasons Freeman decided to resign was because Nucor Steel was to pay her more money.

*Id.* ¶ 37.

## II.  Procedural History

On March 30, 2009, Freeman filed the instant action alleging violations of the

FMLA, the ADA, § 1981, and Title VII.  Specifically, the counts in the complaint are as

follows:

<u>Count 1</u>:    Retaliation in violation of the FMLA;

<u>Count 2</u>:    Disability discrimination and harassment in violation of the ADA;

<u>Count 3</u>:    Race discrimination (failure to promote / transfer, unequal pay, and constructive discharge) in violation of Title VII;

<u>Count 4</u>:    Race discrimination (failure to promote / transfer, unequal pay, and constructive discharge) in violation of § 1981; and

<u>Count 5</u>:    Retaliation in violation of the ADA, Title VII, and § 1981.

(Doc. # 1, at 5–11, ¶¶ 38–58).  On May 3, 2010, Koch Foods filed the pending motions

for partial judgment on the pleadings and for summary judgment.

## DISCUSSION

## I.  The Motion to Amend the Complaint

On December 21, 2010, this Court entered an Order stating its inclination to grant

summary judgment to Koch Foods on Freeman's FMLA reinstatement claim under 29

U.S.C. § 2614(a) because the claim was not raised in her Complaint and because the

Complaint cannot be amended by argument in a response to a motion for summary

13

judgment.  (Doc. # 56).  Freeman filed a response, alleging that the FMLA reinstatement claim under 29 U.S.C. § 2614(a) was raised in her Complaint and seeking, in the alternative, leave to amend her Complaint.  (Doc. # 64).  For purposes of the motion for summary judgment, this Court will assume, without deciding, that Plaintiff has sufficiently plead a reinstatement claim under 29 U.S.C. § 2614(a).  Thus, the motion for leave to amend the complaint, (Doc. # 64), is due to be DENIED as MOOT.

## II.  The Motion for Judgment on the Pleadings

In support of its motion for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c), Koch Foods argues that Freeman's EEOC charge fails to identify her claims of constructive discharge or disability harassment.  (Doc. # 40, at 3, ¶ 7).  Both the ADA and Title VII require a plaintiff to file a timely EEOC charge as a prerequisite to bringing suit.  *Houston v. Army Fleet Servs., L.L.C.*, 509 F. Supp. 2d 1033, 1040 (M.D. Ala. 2007) (Fuller, C.J.).  Because of this prerequisite and because the claims of harassment under the ADA and constructive discharge under the ADA and Title VII are allegedly not covered by the EEOC charge, Koch Foods contends that these claims should be dismissed.  In response, Freeman argues that the EEOC charge encompasses these claims and that they should not be dismissed.  (Doc. # 51, at 2–5).

### A.  The Standard of Review under Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the

pleadings." Fed. R. Civ. Pro. 12(c).  "In deciding a Rule 12(c) motion for judgment on

the pleadings, a Court may consider only the pleadings, in this case the Complaint and

[the] Answer[]."  *Guar. Co. of N. Am. USA v. W.D. Wainwright & Sons, Inc.*, No. 2:09-

cv-1003-MEF-TFM, 2010 U.S. Dist. LEXIS 27548, at *4 (M.D. Ala. Mar. 23, 2010)

(Fuller, C.J.) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1096 n.46 (11th Cir. 2001)).

Included in the "pleadings" that a Court can consider under 12(c) are those documents

which are attached to the Answer or Complaint.  *See id.* (citing Fed. R. Civ. Pro. 10(c)).

Thus, when considering the motion for partial judgment on the pleadings, this Court may

consider the Complaint, the EEOC charge attached to the Complaint, and the Answer.

"The fact allegations in the complaint are taken to be true, but those of the answer

are taken as true only where and to the extent that they have not been denied or do not

conflict with those of the complaint."  *Id.* (citing *Stanton v. Larsh*, 239 F.2d 104, 106 (5th

Cir. 1956)).[3]  In other words, a judgment on the pleadings "must be based on the

undisputed facts appearing in all the pleadings."  *Stanton*, 239 F.2d at 106 (citations

omitted).  Thus, to prevail upon a 12(c) motion for judgment on the pleadings, the movant

must establish that "there are no material facts in dispute and the moving party is entitled

to judgment as a matter of law."  *Guar. Co. of. N. Am. USA*, 2010 U.S. Dist. LEXIS

27548, at *4; *see also Freeman v. Koch Foods of Ala.*, No. 2:09-cv-270-MEF, 2010 U.S.

---

[3] In *Bonner v. City of Prichard, Alabama*, the Eleventh Circuit adopted as binding all
Fifth Circuit decisions prior to the close of business on September 30, 1981.  661 F.2d 1206,
1209 (11th Cir. 1981) (en banc).

Dist. LEXIS 59502, at * (M.D. Ala. June 15, 2010) (Fuller, C.J.) ("The Court must

scrutinize the complaint, construed in the plaintiff's favor, to test if it alleges 'enough

factual matter, accepted as true, to state a claim to relief that is plausible on its face.")

(citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)).  Taking the factual allegations in

the complaint as true, the only issue in the instant motion is whether Freeman's claims of

harassment under the ADA and constructive discharge under the ADA and Title VII are,

as a matter of law, encompassed within her EEOC charge.

**B.  The 180-Day Requirement and the Scope of an EEOC Charge**

In *Houston*, this Court explained that both Title VII and the ADA require a

plaintiff to file a timely charge with the EEOC as an administrative prerequisite to

bringing suit.  509 F. Supp. 2d at 1040 ("As an administrative prerequisite to filing suit

under Title VII, an employee must file a timely charge of discrimination with the EEOC.

Likewise, to assert a claim under the ADA, an employee must comply with the same

procedural requirements to sue under Title VII, and thus, a timely EEOC charge is

required under the ADA as well.") (citations omitted); *see also* 42 U.S.C. § 2000e-5(e)(1)

(providing that a Title VII plaintiff in a non-deferral state, such as Alabama, must file an

EEOC charge within 180 days of when an alleged unlawful employment practice

occurred); 42 U.S.C. § 12117(a) (applying the remedies and procedures of Title VII to the

ADA).  "[I]f a plaintiff fails to file an EEOC charge before the 180-day limitations

period, the plaintiff's subsequent lawsuit is barred and must be dismissed for failure to

exhaust administrative remedies." *Thomas v. Ala. Council on Human Rels., Inc.*, 248 F.

Supp. 2d 1105, 1115 (M.D. Ala. 2003) (Fuller, J.) (citing *Brewer v. Alabama*, 111 F.

Supp. 2d 1197, 1204 (M.D. Ala. 2000)); *accord Pijnenburg v. W. Ga. Health Sys., Inc.*,

255 F.3d 1304, 1305 (11th Cir. 2001) ("It is settled law that in order to obtain judicial

consideration of a [Title VII] claim, a plaintiff must first file an administrative charge

with the EEOC within 180 days after the alleged unlawful employment practice

occurred.").[4]

The purpose of requiring a plaintiff to file an administrative charge with the EEOC

is to "trigger[] the investigatory and conciliatory procedures of the EEOC." *Houston*, 509

F. Supp. 2d at 1040 (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.

1970)).  As this Court expounded upon in *Houston*:

> [T]he charge must enable the EEOC to serve its administrative enforcement
> role by conducting a full investigation while also providing the employer with
> advance notice of the claim and an opportunity to resolve the dispute.  *See,
> e.g.*, *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279–80 (11th Cir.

---

[4]  The 180-day procedural time-bar is an integral part of the statutory scheme of bringing
discrimination claims under Title VII.  As this Court stated in *Thomas*:

> '[S]trict adherence' to this procedural requirement 'is the best guarantee of
> evenhanded administration of the law.' *Mohasco Corp. v. Silver*, 447 U.S. 807, 826,
> 65 L. Ed. 2d 532, 100 S.C. 2486 (1980).  By choosing this relatively short deadline,
> 'Congress clearly intended to encourage the prompt processing of all charges of
> employment discrimination.'  *Id.*  Indeed, this procedural rule, is not a mere
> technicality, but an integral part of Congress' statutory scheme that should not 'be
> disregarded by courts out of a vague sympathy for particular litigants.' *Baldwin
> County Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 80 L. Ed. 2d 196, 104 S. Ct. 1723
> (1994).

248 F. Supp. 2d at 1115.

17

> 2004) (collecting cases discussing the purpose of the administrative exhaustion
> requirement).  Another important purpose of the charge is that i[t] serves to
> notify the employer of the allegations made against it.

*Id.*  Because of this focus on the EEOC's investigatory function, the scope of an EEOC

charge is determined by the extent of a reasonable investigation by the EEOC.  *See*

*Sanchez*, 431 F.2d at 466 ("[A] judicial complaint filed pursuant to Title VII may

encompass any kind of discrimination like or related to allegations contained in the

charge and growing out of such allegation during the pendency of the case before the

EEOC.  In other words, the scope of the judicial complaint is limited to the scope of the

EEOC investigation which can reasonably be expected to grow out of the charge of

discrimination."); *see also Jacobs v. Henderson*, No. 99-T-1357-N, 2001 U.S. Dist.

LEXIS 26032, at *15 (M.D. Ala. Nov. 20, 2001) (Thompson, J.) ("The plaintiff is free to

allege in court 'any kind of discrimination like or related to the charge's allegations,

limited only by the scope of the EEOC investigation that could reasonably be expected to

grow out of the initial charges of discrimination.'") (citing *Chanda v. Engelhard/ICC*,

234 F.3d 1219, 1225 (11th Cir. 2000)).

Although the 180-day requirement is to be "strict[ly] adhere[d]" to, *Mohasco*, 447

U.S. at 826, courts do "not strictly interpret the *scope* of [the] EEOC charge" itself

because "charging parties often prepare EEOC charges by workers who lack education or

sophistication without the assistance of counsel."  *Houston*, 509 F. Supp. 2d at 1042

(emphasis added) (citing *Gregory*, 355 F.3d at 1280; *Sanchez*, 431 F.2d at 463).  Thus,

the "like or related" standard for determining the extent of a reasonable EEOC investigation—and therefore, the scope of an EEOC charge—is a "liberal" one. *Jacobs*, 2001 U.S. Dist. LEXIS 26032, at *16.

When considering the extent of a reasonable investigation by the EEOC, courts begin with the EEOC charge itself, with a particular focus on the factual statement contained therein. *Houston*, 509 F. Supp. 2d at 1042 ("The starting point for determining the permissible scope of the judicial complaint is the EEOC charge and investigation. The crucial element of a charge of discrimination is the factual statement contained therein.") (citations omitted). Due to the focus on the factual statement, the failure to check an appropriate box is not dispositive. *See id.* ("[A] charging party's failure to check the appropriate box on the EEOC charge of discrimination form indicating what he believes to be the basis for the discrimination (i.e. race, color, sex, disability, retaliation, national origin, age, or religion) does not bar the plaintiff from litigating the claim so long as the factual allegations in the EEOC charge are sufficient.") (citing *Sanchez*, 431 F.2d at 462–63 ("[W]e decline to hold that the failure to place a check mark in the correct box is a fatal error.")); *see also Sanchez*, 431 F.2d at 462 ("The selection of the type of discrimination alleged, i.e., the selection of which box to check, is in reality nothing more than the attachment of a legal conclusion to the facts alleged.").

## C.  Analysis

With respect to the ADA harassment claim, it is unclear whether such a claim exists.  *Compare Valadez v. Steiner Corp.*, 156 Fed. Appx. 821, 824 (7th Cir. 2005) ("[T]his circuit has yet to recognize a cause of action under the ADA for harassment or hostile work environment, and we decline [the plaintiff's] invitation to recognize such a cause of action on the facts of this case.") *with Hardshoe v. Mercy Med. Ctr.*, 34 Fed. Appx. 441, 448 (6th Cir. 2002) ("In order to establish a claim of harassment under the ADA, a plaintiff must establish that (1) she was disabled; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures.") (citations omitted).  This Court has been unable to find any precedent from the Supreme Court of the United States or the Eleventh Circuit holding that the ADA provides for a disability-harassment cause of action.[5]

---

[5]  Freeman cites to two cases for the proposition that such a cause of action exists.  (Doc. # 49, at 10) (citing *Bruce v. City of Gainesville, Ga.*, 177 F.3d 949, 953–54 (11th Cir. 1999); *Gaither v. Barron*, 924 F. Supp. 134, 136 (M.D. Ala. 1996) (Albritton, J.)).

In *Bruce*, the Eleventh Circuit held that attorneys' fees were improperly granted to a defendant-employer who had prevailed on summary judgment as to the plaintiff's four ADA claims because the claims were not "frivolous."  177 F.3d at 952.  At no point did the majority hold that a cause of action for disability harassment exists under the ADA.  In fact, Freeman cites to the dissenting opinion, which would have held that the claims were frivolous and attorneys' fees were properly granted.  The dissent would have found that there was "no evidence that the alleged harassment affected a term or condition of [the plaintiff's] employment, and many of the claims of harassment were wholly unsubstantiated."  (citing *Walton v. Mental Health Ass'n*, 168 F.3d 661, 667 (3d Cir. 1999); *Cross v. Ala.*, 49 F.3d 1490, 1504 (11th Cir. 1995); *Haysman v.*

Assuming that the ADA provides for such a claim, this Court finds that Freeman's EEOC charge fails to allege facts such that a reasonable EEOC investigation would encompass a disability-harassment claim.  First, although not dispositive, Freeman failed to check the box indicating that the alleged discrimiantion was continuing.  Second, Freeman's factual statement only alleges discrete instances of discrimination, such as failing to return her to her Accounts Receivable position and failing to consider her for "positions of receiving clerk, accounts payable and benefits."  (Doc. # 1 Ex. 1).  Third, nowhere does she allege any acts of harassment—as opposed to discrete instances of discrimination—based upon her disability.  Indeed, the only mention she makes of her

---

*Food Lion, Inc.*, 893 F. Supp. 1092, 1107 (S.D. Ga. 1995)).  Neither the Eleventh Circuit case of *Cross*, nor the Southern District of Georgia case of *Haysman* cited by the dissent in *Bruce*, concerned disability-harassment claims under the ADA.  Both dealt with harassment and hostile environment claims under Title VII.  A dissenting opinion citing *only* to a Third Circuit case for the proposition that disability-harassment claims exist under the ADA is insufficient to establish that such a cause of action exists.

Similarly, Freeman cites to *Gaither*, a case from this very district.  However, *Gaither* did not hold that the ADA provides for disability-harassment claims because "[t]he plaintiff did not invoke jurisdiction under the ADA or the Rehabilitation Act."  924 F. Supp. at 136.  The *Gaither* court stated that *other* courts "have held that harassment is actionable under those acts."  *Id.* at 136–37 (citing *Haysman*, 893 F. Supp. at 1092; *Easley v. West*, 1994 U.S. Dist. LEXIS 17789, 1994 WL 702904 (E.D. Pa. Dec. 13, 1994)).  The court then stated that courts which recognize such claims generally use the hostile work environment approach of Title VII.  *Id.* at 137.  Finally, the *Gaither* court held that, under this approach, the plaintiff's supposed disability-harassment claim would fail on the 12(b)(6) motion before it.  At no point did the *Gaither* court hold that such a cause of action actually existed under the ADA.  Instead, the opinion should be read as holding that, even *assuming* that such a cause of action exists, the plaintiff failed to satisfy the 12(b)(6) standard.

Given the lack of precedent in this circuit as to the existence of a disability-harassment claim under the ADA, this Court declines to recognize it today.  However, assuming that such a cause of action does exist, this Court will consider whether it would properly be within the scope of the EEOC charge at issue.

disability is that she took a medical leave of absence because of it and that she "believes that [she] was denied these positions because of [her] disability."  Plaintiff contends that the factual allegation regarding the removal of her belongings from her desk while she was on vacation was sufficient to allege disability harassment.  (Doc. # 51, at 3). However, no reasonable investigation by the EEOC would encompass a disability-harassment claim based upon these facts, and Koch Foods is entitled to judgment as a matter of law on Freeman's disability-harassment claims under the ADA.  Thus, the Motion for Partial Judgment on the Pleadings, (Doc. # 40), is due to be GRANTED with respect to Freeman's ADA harassment claims.[6]

With respect to the constructive discharge claims, these claims are disposed of on summary judgment.  As such, the Motion for Partial Judgment on the Pleadings, (Doc. # 40), is DENIED as MOOT as to the constructive discharge claims.

---

[6]  In the alternative, this Court finds that, assuming that such a cause of action for and that the EEOC charge encompasses the disability-harassment claim, Freeman has failed to establish that the alleged acts of disability harassment—namely, the alleged e-mail regarding Freeman's diagnosis and the removal of her belongings from her desk—were sufficiently severe or pervasive so as to alter the terms or conditions of her employment.  *Compare Gaither*, 924 F. Supp. at 137 (noting that courts recognizing an ADA harassment claim follow the hostile work environment approach of Title VII) *with Walton v. Johnson & Johnson Servs.*, 347 F.3d 1272, 1279 (11th Cir. 2003) ("[H]ostile work environment exists under Title VII where 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'") (citations omitted); *see also Harris v. Forklift Sys., Inc.*, 114 S. Ct. 367, 371 (1993) (noting that under Title VII harassment claims, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance").  Thus, even if an ADA harassment cause of action exists and Freeman's EEOC charge such a claim, Koch Foods would be entitled to summary judgment.  For this additional reason, the ADA harassment claim is due to be dismissed.

## III.  The Motion for Summary Judgment

### A.  Standard of Review under Rule 56(a)

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. Pro. 56(a).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[7]  *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322–23; *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–16 (11th Cir. 1993) ("For issues, however, on which the non-movant would bear the burden of proof at trial, . . . '[t]he moving party may simply show[]—that is, point[] out to the

---

[7] "An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is 'merely colorable' or is 'not significantly probative.'" *Lewis*, 908 F. Supp. at 943–44. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  "Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case."  *Id.* at 944 (citing *Anderson*, 477 U.S. at 248).

district court—that there is an absence of evidence to support the non-moving party's case.'") (quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir. 1991)).

Once the moving party has met its burden, the non-movant must "go beyond the pleadings" and show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. Pro. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). *To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (emphasis added). A plaintiff must present evidence demonstrating that he can establish the basic elements of his claim. *Celotex*, 477 U.S. at 322. A court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).[8]  Here, Koch Foods argues that it is entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56(a) as to all of Freeman's claims.

### B.  The Title VII and § 1981 Claims

Title VII prohibits an employer from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  Title VII also prohibits an employer from retaliating against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, or assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter."  *Id.* § 2000e-3(a).  Similarly, § 1981 makes it unlawful to discriminate on the basis of race in the making and enforcing of contracts.  42 U.S.C. § 1981(a).  The phrase "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all the benefits, privileges, terms, and conditions of the contractual relationship."  *Id.* § 1981(b).  Thus, like Title VII, § 1981 provides for both race discrimination and retaliation claims by employees against employers.

As the Eleventh Circuit has explained, "[b]oth § 1981 and Title VII 'are subject to

---

[8]  Thus, despite Freeman's failure to respond to the procedural arguments such as Title VII's 180-day bar or § 1981's statute of limitations, it must still be determined whether Koch Foods is entitled to judgment as a matter of law based upon the record before this Court.

25

the same standards of proof and employ the same analytical framework.'" *McCray v. Wal-Mart Stores, Inc.*, 377 Fed. Appx. 921, 923 (11th Cir. 2010); *see also Sims v. Coosa County Bd. of Educ.*, No. 207cv704-MEF, 2008 U.S. Dist. LEXIS 66939, at *12 (M.D. Ala. Sept. 2, 2008) (Fuller, C.J.) ("The elements of § 1981 race discrimination claim in the employment context are the same as a Title VII disparate treatment claim.") (citing *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989)).  Thus, the substantive analysis for these claims will be the same, and Title VII and § 1981 cases will be used interchangeably during this analysis.  Where, as here, a plaintiff relies upon circumstantial evidence of discrimination and retaliation under Title VII and § 1981, courts apply the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Crawford v. Carroll*, 529 F.3d 961, 975–76 (11th Cir. 2008).  Under this analysis, once a plaintiff has established a prima facie case for discrimination or retaliation, "the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason'" for the challenged action.  *Id.* at 976 (quoting *McDonnell Douglas*, 411 U.S. at 802).  If the employer does so, "the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination."  *Id.* (citations omitted).  Here, Freeman brings claims for race discrimination (unequal pay and failure to promote), retaliation, and constructive discharge.

### i. The Unequal Pay Claims

To establish a prima facie case of unequal pay due to race, a plaintiff "must show that [s]he was paid less than a member of a different race was paid for work requiring substantially the same responsibilities." *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (11th Cir. 1981); *see also Head v. Pitts Enters.*, No. 1:09-cv-187-WHA, 2010 U.S. Dist. LEXIS 70545, at *47 (M.D. Ala. July 14, 2010) (Albritton, J.) ("To make out a prima facie case regarding discrimination in pay under section 1981, [the plaintiff] must establish that (1) [s]he belongs to a racial minority; (2) [s]he received low wages; and (3) similarly situated comparators outside [her] protected class received higher compensation; and (4) [s]he was qualified to receive the higher wage."). "[A] plaintiff seeking to demonstrate that similarly situated white employees were treated differently must produce evidence that [her] comparators were 'similarly situated in all relevant aspects.'" *Gibbons v. Auburn Univ.*, 108 F. Supp. 2d 1311, 1318 (M.D. Ala. 2000) (Thompson, J.) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). In other words, the comparator must be "nearly identical" to the plaintiff. *Head*, 2010 U.S. Dist. LEXIS at *47 (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004)). Here, Freeman has pointed to two persons whom she claims were paid more than her for performing substantially the same responsibilities: Haats and Nichols.

### a.  The Unequal Pay Claim Regarding Haats

Here, Freeman has failed in her burden of establishing that she and Haats performed substantially the same responsibilities.  While it is true that Haats worked in Freeman's position as an Accounts Receivable Clerk while Freeman was on leave, Koch Foods has put forth evidence that Haats also trained for the Accounts Payable position at the same time.  Freeman has presented no evidence, nor can this court find any, to contradict this assertion.  Not only did Haats perform Freeman's previous responsibilities, but she also took on the additional responsibilities of training for another position.  Thus, Freeman has failed to establish that Haats was similarly situated to her with respect to job responsibilities.  Thus, this court finds that summary judgment is DUE to be GRANTED in favor of Koch Foods on Freeman's Title VII and § 1981 unequal pay claims regarding Haats's position in Accounts Receivable.[9]

### b.  The Unequal Pay Claim Regarding Nichols

Similarly, Freeman has failed to establish that she and Nichols performed substantially the same duties in their respective positions in Payroll and Benefits.  Freeman states that when she worked in benefits, she mailed out employees' benefits information related to insurance and COBRA.  Furthermore, the only evidence that

_____

[9]  In the alternative, this Court finds that Freeman has failed to rebut the legitimate, non-discriminatory reason that Haats was paid more because she took on the additional duties of training for the Accounts Payable Clerk position.  For this additional reason, Koch Foods is entitled to judgment as a matter of law on the Title VII and § 1981 unequal pay claims regarding Haats position in Accounts Receivable.

Freeman has put forth regarding the job responsibilities of the Benefits and Payroll Clerk position is that Campbell allegedly told her about a benefits administrator position that would consist of the duties she had previously performed in the benefits area.  However, she also admits that she is unaware of what the job duties actually are for the Benefits and Payroll Clerk position.  Koch Foods, on the other hand, has put forth evidence that the Benefits and Payroll Clerk position consisted of processing the payroll and benefits for 700 to 800 additional employees.  Freeman has failed to offer evidence sufficient to create a genuine issue of material fact with respect to the Benefits and Payroll Clerk's job responsibilities.  As such, Freeman has failed to establish that she and Nichols performed substantially the same duties, and Koch Foods is therefore entitled to judgment as a matter of law.   Thus, this court finds that summary judgment is DUE to be GRANTED in favor of Koch Foods on Freeman's Title VII and § 1981 unequal pay claims regarding Nichols' position as the Benefits and Payroll Clerk.

### ii.  The Failure to Promote Claims

To establish a prima facie case of a failure to promote / transfer, a Title VII or § 1981 plaintiff must show the following:

> 1) that she belongs to a protected class; (2) that she was qualified for a job for which the employer was seeking applicants; 3) that, despite her qualifications, she was rejected; and 4) that, after her rejection, the employer continued to seek applicants or filled the position with a person outside of the plaintiff's protected group.

*Gaddis v. Russell Corp.*, 242 F. Supp. 2d 1123, 1135 (M.D. Ala. 2003) (Albritton, J.)

(citing *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998), *cert. denied*, 528 U.S. 809 (1999); *Williams v. Ala. Indus. Dev. Training*, 146 F. Supp. 2d 1214, 1219 (M.D. Ala. 2001) (De Ment, J.)).  Koch Foods does not contest that Freeman belongs to a protected class or that her promotion / transfer requests were rejected.  However, Koch Foods contends that Freeman fails to establish a prima facie case of discrimination for each of the positions sought.  Additionally, Koch Foods claims that, even if Freeman were to establish a prima facie case of discrimination, she has failed to establish that Koch Foods' legitimate, nondiscriminatory reasons for the employment decisions were pretext.[10]

### a. The HR Positions

Freeman contends that she was denied various positions in HR; however, Koch Foods contends that Freeman has failed to establish a prima facie case for failure to promote / transfer because she "is unable to identify any specific positions in Human Resources that she was denied."  (Doc. # 42, at 27).  Koch Foods further emphasizes that Freeman was "unable to identify when she was denied these Human Resources's positions" and "could not identify who received the positions she wanted in Human

---

[10]  Koch Foods argues that Freeman's claims for failure to promote / transfer fail with respect to the HR positions because "none of these positions . . . qualified as a promotion." (Doc. # 42, at 31).  To support this contention, Koch Foods points out that none of the HR positions paid a higher salary than Freeman's position as an Accounts Receivable Clerk and that they were not management level positions.  *Id.* (citing *Morris v. Wallace Cmty. College-Selma*, 125 F. Supp. 2d 1315, 1328 (S.D. Ala. 2001)).  Because these claims are disposed of on other grounds, this argument need not be considered at this time.

Resources or the race of any individuals who received those positions." *Id.* In her response to summary judgment, Freeman failed to address any of these arguments regarding the HR positions. As such, this Court agrees that Freeman has failed to establish a prima facie case of failure to promote / transfer with respect to the HR positions. Specifically, Freeman has failed to establish that Koch Foods was seeking applicants for any HR positions and that they continued to seek applicants or filled the position with someone outside of Freeman's protected group after she was rejected. Thus, summary judgment is due to be GRANTED with respect to the failure to promote / transfer claims regarding the HR positions.

### *b.* Little's Receiving Clerk Position

In her response to the summary judgment motion, Freeman also claims that she requested a Receiving Clerk position but was rejected in favor of Little. Koch Foods contends that the Complaint fails to make any reference "to this position, to Ms. Little or to [Freeman] having sought and been denied this position." (Doc. # 53 at 9). As such, Koch Foods contends that adding the claim at this juncture violates Rule 8 of the Federal Rules of Civil Procedure. *Id.* This Court agrees. The Federal Rules of Civil Procedure require that a pleading that states a claim for relief must contain a short plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8. Recently, federal courts have recognized a tightening of the liberal pleadings standards such that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *See,*

31

e.g., *Ashcroft*, 129 S. Ct. at 1949 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) .  As the Supreme Court has explained "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. at 1949.  *Accord, Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009)*.*  Moreover, if a plaintiff fails to plausibly allege a claim in her complaint, she may not amend her complaint through argument made in opposition to a defendant's motion for summary judgment.  *See Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1314 (11th Cir. 2004) (per curiam) (holding that the liberal pleading standard does not allow plaintiff to raise a new claim at the summary judgment stage).  A careful review of the Complaint, (Doc. # 1), reveals no hint that Freeman alleges a failure to promote / transfer claim with respect to the Receiving Clerk position given to Little.  Thus, Koch Foods' motion for summary judgment is due to be GRANTED with respect to any failure to promote / transfer claims regarding Little's position as a Receiving Clerk.

### c. **Harden's Accounts Payable Position**

With respect to Harden's Accounts Payable position, even if Freeman can establish a prima facie case of failure to promote / transfer, Koch Foods has presented evidence of a legitimate, non-discriminatory reason for its employment decision—namely, that Freeman was not given the position because it came available while she was on leave and

because she had not requested a position in Accounts Payable prior to this time.  (Doc. #
42, at 18; Doc. # 53, at 25).  Thus, Freeman must supply "evidence, including the
previously produced evidence establishing the prima-facie case, sufficient to permit a
reasonable factfinder to conclude that the reasons given by the employer were not the real
reasons for the adverse employment action."  *Davis v. Qualico Miscellaneous, Inc.*, 161
F. Supp. 2d 1314, 1322 (M.D. Ala. 2001) (Thompson, J.).

"Because the plaintiff bears the burden of establishing pretext, [s]he must present
'significantly probative' evidence on the issue to avoid summary judgment."  *Young v.
Gen. Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988).  In order to show pretext, a
plaintiff must present sufficient evidence to show "*both* that the [proffered] reason was
false, and that discrimination was the real reason."  *St. Mary's Honor Ctr. v. Hicks*, 509
U.S. 502, 515 (1993) (emphasis added).  The plaintiff must meet the proffered reason
"head on and rebut it, and the employee cannot succeed simply by quarreling with the
wisdom of that reason."  *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).
Thus, courts consider "whether the plaintiff has demonstrated such weaknesses,
implausibilities, inconsistencies, incoherencies, or contradictions in the employer's
proffered legitimate reasons for its action that a reasonable factfinder would find them
unworthy of credence."  *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289
(11th Cir. 2005).  Here, Freeman has failed to present any evidence directly or indirectly
casting doubt upon Koch Foods' proffered reason, and Koch Foods is entitled summary

33

judgment as a matter of law.  Thus, the motion for summary judgment is due to be
GRANTED with respect to Freeman's Title VII and § 1981 claims regarding Harden's
Accounts Payable position.

### d.  Haats' Accounts Payable Position

Similarly, with respect to Haats' Accounts Payable Position, Koch Foods has
advanced the legitimate, nondiscriminatory reason that Haats was more qualified for the
position than Freeman.  (Doc. # 42, at 30–31).  Freeman contends that this proffered
reason is pretextual because the Accounts Payable and Accounts Receivable positions
involved the same processes and skills.  (Doc. # 49, at 18).  Thus, Freeman argues that
she was equally as qualified by virtue of her Accounts Receivable experience.  *Id.*
However, the undisputed evidence before this Court is that Haats had been training for
the Accounts Payable position.  Freeman even admits that Haats "notably had more
Accounts Payable experience."  *Id.*  That Freeman may have also been able to perform the
duties of the Accounts Payable position does nothing to cast doubt upon Haats was given
the position because she had been training for it and was, therefore, more qualified.  *See
Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000) ("In a failure to promote
case, a plaintiff cannot prove pretext by simply showing that she was better qualified than
the individual who received the position that she wanted.  A plaintiff *must not merely
show that the defendant's employment decision were mistaken* but that they were in fact
motivated by [a discriminatory reason].") (emphasis added).  Here, Freeman has failed to

present any evidence to establish that the reason proffered by Koch Foods is false, let alone that racial discrimination is the true reason.  *See St. Mary's*, 509 U.S. at 515; *Chapman*, 229 F.3d at 1030 ("'[F]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions.'") (citations omitted).[11]  Koch Foods is therefore entitled to judgment as a matter of law.  Thus, summary judgment is due to be GRANTED on Freeman's Title VII and § 1981 claims with respect Haats' Accounts Payable position.

### *e.*  Nichols' Benefits and Payroll Clerk position

Finally, Freeman alleges a failure to promote / transfer claim with respect to Nichols' Benefits and Payroll Clerk position.  Even if Freeman establishes a prima facie case of discrimination, Koch Foods has presented a legitimate, nondiscriminatory reason for its employment decision—namely, that Nichols was more qualified for the position than Freeman.  Again, Freeman attempts to establish pretext by arguing that she was at

---

[11]  Freeman has alleged that when she asked about the Accounts Payable position, Campbell stated that she was asking for it because she bought a house where rich, white people live.  However, she failed to argue that this statement was evidence of pretext.  There is no burden upon a district court to distill every potential argument that could be made based upon the materials before it on summary judgment; the onus is in the parties to formulate arguments.  *See, e.g.*, *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990); *Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F. Supp. 2d 1280, 1286 (M.D. Ala. 2001) (Albritton, J.).  However, even if Freeman had argued that this statement provided evidence of pretext, it would still be insufficient to meet Koch Foods' legitimate, nondiscriminatory reason head on and rebut it.  The undisputed evidence before this Court establishes that Koch Foods trained Haats specifically to fill the position in Accounts Payable, a position that Freeman admits that Haats had more experience in.

least as qualified as Nichols for the position.  To support this contention, Freeman emphasizes that Campbell told her that the benefits administrator position "was substantially similar to the duties she was already performing" in benefits.  (Doc. # 49, at 17).  However, Freeman herself admitted that she did not know what the position's job responsibilities actually were, and Koch Foods has presented uncontested evidence that it involved the processing of payroll and benefits for 700 to 800 employees.  Additionally, Freeman herself admits that her only experience in benefits involved the *mailing out of forms*, not the *administration* or *processing* of benefits.  Thus, Freeman's claim that her benefits experience made her at least as qualified for the position contradicts the undisputed evidence.  Again, Freeman has failed to establish that Koch Foods' proffered reason is false and unworthy of credence, and Koch Foods is entitled to judgment as a matter of law.  Thus, summary judgment is due to be GRANTED on Freeman's Title VII and § 1981 claims regarding the failure to promote / transfer into the Benefits and Payroll Clerk position.

### *iii.*  The Retaliation Claims

To establish a prima facie case of retaliation under Title VII or § 1981, a plaintiff must show that "(1) she engaged in [a statutorily protected] activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action."  *Crawford*, 529 F.3d at 970.

36

### a. The Denial of a Position in HR

Koch Foods points out that Freeman appears to raise a retaliation claim regarding an HR manager's denial of an HR position unless she dropped her EEOC charge. (Doc. # 42, at 34). However, Koch Foods contends that any such claim is barred as violative of Federal Rule of Civil Procedure 8 because Freeman failed to plead it in her Complaint. This Court agrees. As previously stated, in order to state a claim, a pleading must contain a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8. If a plaintiff fails to plausibly allege a claim in her complaint, she may not amend her complaint through argument made in opposition to a defendant's motion for summary judgment. *See Gilmour,* 382 F.3d at 1314. As with Little's Receiving Clerk position, a careful review of the Complaint, (Doc. # 1), reveals no hint that Freeman alleges a retaliation claim based on the HR manager's alleged offer to transfer her if she dropped her EEOC charge. Indeed, Freeman fails to even address this argument in her response to the summary judgment motion and makes no mention of such a claim. As such, Koch Foods' motion for summary judgment is due to be GRANTED with respect to any Title VII or § 1981 retaliation claim regarding an offer to transfer Freeman into HR in return for her dropping her EEOC charge.

### b. Campbell Instructing Haats and Matthews not to Speak to Freeman

Freeman's Complaint does, however, sufficiently state a claim for retaliation with respect to Campbell allegedly telling Haats and Matthews not to speak to Freeman. Koch

Foods contends that, even if such a statement were made, it would not rise to the level of an adverse employment action for this retaliation claim.  Freeman, on the other hand, argues that an employee would consider it adverse for her supervisor to halt communication with coworkers.  And, given the small number of individuals who worked in [the] Accounting Department, to be 'cut-off' from one's coworkers would prove to be substantially detrimental and significantly affect the terms of one's employment."  (Doc. # 49, at 26).  However, the anti-retaliation provisions "protect[] an individual not from all retaliation but from retaliation that *produces an injury or harm*."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).  Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse."  *Id.* at 68.  A materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Crawford*, 529 F.3d at 970 (citing *Burlington*, 548 U.S. at 68).  Although a jury typically should decide whether a defendant's actions are sufficiently adverse, "petty and trivial" actions by the defendant are not sufficiently adverse.  *Id.* at 974 fn. 13; *see also Burlington*, 548 U.S. at 68 ("[N]ormally petty slights, minor annoyances, and simple lack of good manners" would not dissuade a reasonable employee from making or supporting a charge of discrimination.").

Indeed, the instruction to snub Freeman is exactly the type of trivial action that the Supreme Court emphasized would not constitute an adverse employment action.  *See*

*Burlington*, 548 U.S. at 68 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.") (citing 1 B. Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed. 1996) (noting that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers" are not actionable under [the anti-retaliation statute)). Further, Freeman's own evidence demonstrates that the instruction did not prevent her from speaking to her co-workers. Indeed, she spoke to Matthews regarding the stress she felt prior to resigning. No reasonable jury could find that such an instruction, which did not even prevent Freeman from speaking with her co-workers, would dissuade a reasonable worker from making or supporting a charge of discrimination. As such, summary judgment is due to be GRANTED to Koch Foods on Freeman's Title VII and § 1981 retaliation claim regarding Campbell's alleged statement to Haats and Matthews.[12]

### iv. The Constructive Discharge Claim

A "[c]onstructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (citations omitted). Whether an employee's working conditions were so intolerable is an objective question. *See Virgo v.*

---

[12] Because there was no adverse employment action sufficient for this claim of retaliation, this Court need not consider Koch Foods' argument that Freeman's evidence establishing the statement is inadmissible.

*Riviera Beach Assocs.*, 30 F.3d 1350, 1363 (11th Cir. 1994) ("A claim for constructive discharge requires the employee to demonstrate that the work environment and conditions were so unbearable that a reasonable person in that person's position would be compelled to resign.").  "[F]or a constructive discharge claim to present a jury issue and thereby survive summary judgment, the plaintiff must produce substantial evidence that conditions were intolerable."  *Akins v. Fulton County*, 420 F.3d 1293, 1299–1300 (11th Cir. 2005).

Here, this Court finds that the conditions shown by Freeman do not meet the high burden established by the Eleventh Circuit to constitute constructive discharge.  *See, e.g.*, *Poole v. Country Club of Columbus*, 129 F.3d 551, 553 (11th Cir. 1997) (grant of summary judgment reversed where plaintiff was "[s]tripped of all responsibility, given only a chair and no desk, and isolated from conversations with other workers"); *see also* *Wardell v. Sch. Bd.*, 786 F.2d 1554, 1558 (11th Cir. 1986) (holding that no constructive discharge occurred where the female plaintiff was not given a promotion, the promotion went to a less-qualified male, and the plaintiff was given additional duties requiring her to work longer hours).  At the time of her resignation, Freeman had the same job and responsibilities that she had held the majority of the time that she worked for Koch Foods and/or Sylvest Farms.  She had experienced no pay cut or demotion.  Although Campbell allegedly told her co-workers not to speak to her, Freeman's own testimony evidences that she was not isolated from them.  Thus, even if Freeman had established claims for

40

failure to promote / transfer, unequal pay, and retaliation, she has failed to establish that her working conditions were so intolerable that a reasonable person would have felt compelled to resign.[13]  Thus, Koch Foods is entitled to judgment as a matter of law with respect to Freeman's Title VII and § 1981 constructive discharge claims.  As there are no remaining Title VII or § 1981 claims, Koch Foods' motion for summary judgment is due to be GRANTED as to all of Freeman's Title VII and § 1981 claims.

### C.  The FMLA Claims

The FMLA is designed to "assist families in balancing the demands of the workplace with the needs of the family and to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition."  *Clark v. Macon County Greyhound Park, Inc.*, No. 3:09-cv-556, 2010 U.S. Dist. LEXIS 74967, at *12 (M.D. Ala. July 23, 2010) (Fuller, C.J.) (citing 29 U.S.C. § 2601(b)).  Thus, the FMLA requires employers to allow eligible employees to take a total of twelve weeks of leave—for one of the enumerated reasons—during any twelve month period.  *Id.* (citing 29 U.S.C. § 2612(a)).  Upon return from leave,

---

[13]   Indeed, in her response to the summary judgment motion, Freeman focuses almost entirely on her own subjective feelings with respect to her working conditions.  (Doc. # 49, at 27–29) (discussing the stress felt by Freeman, that she felt humiliated by the e-mail regarding her breast cancer diagnosis, the moving of her belongings while she was on vacation, her belief that she would never advance at Koch Foods, etc.).  Only at the very end of this discussion does Freeman provide the conclusory statement that "[n]o reasonable employee would be expected to endure what [Freeman] endured."  *Id.* at 29.

> any eligible employee who takes leave under section 2612 of this title for
> the intended purpose of the leave shall be entitled . . . (A) to be restored by
> the employer to the position of the employment held by the employee when
> the leave commenced; or (B) to be restored to an equivalent position with
> equivalent employment benefits, pay, and other terms and conditions of
> employment.

29 U.S.C. § 2614(a)(1).

The FMLA also makes it unlawful "for any employer to interfere with, restrain, or

deny the exercise of or the attempt to exercise any right provided under" the FMLA or to

"discharge or in any other manner discriminate against any individual for opposing any

practice made unlawful by" the FMLA.  29 U.S.C. § 2615(a)(1)–(2).  This provision

provides a cause of action not only for discrimination but also for an employer's failure to

comply with the prescriptive provisions of the FMLA, such as that requiring an employer

to grant leave to eligible employees in certain circumstances or for reinstatement upon

return from leave.  *Clark*, 2010 U.S. Dist. LEXIS 74967 at *13.  As this Court further

explained in *Clark*:

> [t]o preserve the availability of these rights, and to enforce them, the FMLA
> creates two types of claims: interference claims, in which an employee
> asserts that her employer denied or otherwise interfered with [her]
> substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1) (2009), and
> retaliation claims, in which an employee asserts that her employer
> discriminated against her because [s]he engaged in activity protected by the
> Act, *see* 29 U.S.C. § 2615(a)(1) & (2) (2009).

*Id.* at *14.

### i.  The Failure to Reinstate Claim

Freeman alleges that Koch Foods failed to reinstate her to her position in Accounts Receivable upon her return from leave.  A failure to reinstate claim such as this is an interference claim—*i.e.* Freeman is claiming that Koch Foods interfered with her substantive right to be reinstated to her previous position or an equivalent one.  An employee returning from FMLA leave has a right to be reinstated to the position she held upon taking leave or to an equivalent position.  29 U.S.C. § 2614(a)(1).  However, the right to reinstatement terminates once the twelve weeks of FMLA leave are finished.  *See Cox v. Autozone, Inc.*, 990 F. Supp. 1369, 1377–79 (M.D. Ala. 1998) (Albritton, J.) ("Under the FMLA, an eligible employee receives twelve weeks of unpaid leave in any twelve month period for certain family and medical purposes without risking his or her job. . . .  An employer has no responsibility to restore a person's job after that twelve week period. . . .  The court finds a clear intent of Congress to protect only those workers who take 12 or fewer weeks of leave."); *see also Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001) ("Among the substantive rights granted by the FMLA to eligible employees are the right to '*12 workweeks of leave* during any 12-month period . . . and the right *following leave* 'to be restored by the employer to the position of employment held by the employee when leave commenced' or to an equivalent position.") (emphasis added) (citations omitted); *Dogmanits v. Capital Blue Cross*, 413 F. Supp. 2d 452, 463 (E.D. Pa. 2005) ("[E]mployees who exhaust the twelve weeks of leave

provided under the FMLA stand to lose their entitlement to job restoration even if their employers provide additional, non-FMLA, leave.").

Here, Koch Foods points out that it granted Freeman 24 weeks of leave, essentially doubling the twelve weeks of FMLA leave to which she was entitled.  (Doc. # 42, at 16). Indeed, the undisputed facts demonstrate that Freeman began her FMLA leave in August of 2006 and did not return until February of 2007.  As a matter of law, Koch Foods could not have interfered with Freeman's substantive right to be reinstated because she had no such right.  Thus, summary judgment is due to be GRANTED with respect to Freeman's failure to reinstate claim.[14]

### ii.  The Retaliation Claims

For FMLA retaliation claims, the plaintiff "carries the burden of showing that the employer's actions were motivated by an impermissible retaliatory or discriminatory animus."  *Baldwin v. Hyundai Motor Mfg. Ala., LLC*, No. 2:08-cv-13-MEF, 2009 U.S. Dist. LEXIS 30921, at *45 (M.D. Ala. Apr. 10, 2009) (Fuller, C.J.) (citing *Strickland*, 239

---

[14]  Even if this Court were to construe Freeman's failure to reinstate claim as a retaliation claim—*i.e.* not an interference claim relying upon a substantive right to reinstatement under 29 U.S.C. § 2614(a)(1)—such a claim would still fail.  As discussed further below, even if a plaintiff establishes a prima facie case of retaliation under the FMLA, an employer may advance a legitimate, non-retaliatory reason for the employment action.  *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2001).  Here, Koch Foods has put forth evidence that Freeman was not immediately returned to her position in Accounts Receivable because the position was possibly being transferred to an out-of-state plant.  As such, the burden falls on Freeman to put forth evidence sufficient to show that this reason is mere pretext for retaliation. *Id.*  Freeman has failed to do so, and Koch Foods would be entitled to judgment as a matter of law.

F.3d at 1207); *see also Ashe v. Aronov Homes, Inc.*, 354 F. Supp. 2d 1251, 1264 (M.D. Ala. 2004) (Fuller, C.J.).  Where, as here, "a plaintiff alleges an FMLA retaliation claim without direct evidence of the employer's discriminatory intent, [courts] apply the burden shifting framework established by the Supreme Court in *McDonnell Douglas*." *Daugherty v. Mikart, Inc.*, 205 Fed. Appx. 826, 827 (11th Cir. 2006) (citing *Hurlbert*, 439 F.3d at 1297).  A plaintiff establishes a prima facie case of FMLA retaliation by showing that: "(1) [s]he engaged in statutorily protected activity; (2) [s]he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action."  *Id.* (citing *Hurlbert*, 439 F.3d at 1298).

Here, Freeman contends that four employment decisions constituted the adverse employment actions sufficient for her FMLA retaliation claims: (1) the moving of her belongings from her desk while she was on vacation; (2) the failure to promote / transfer her into Harden's Accounts Payable position; (3) the failure to promote / transfer her into Haats' Accounts Payable position; and (4) the failure to promote / transfer her into the Benefits and Payroll Clerk position.  Koch Foods argues that Freeman has failed to establish adverse employment actions or a causal connection.  Additionally, although not labeled as such, Koch Foods reiterates its legitimate, non-discriminatory reasons for its challenged employment actions.  *See* Doc. # 42, at 18 ("Harden was hired into a position in Accounts Payable which came open while Freeman was on FMLA leave.  As such, Koch Foods had no responsibility to leave the position open waiting for Freeman to

return."); *id.* at 19 ("Koch Foods did not fail to transfer Freeman [to Haats' Accounts Payable position] because of FMLA leave, but because Koch Foods hired . . . Haats while Plaintiff was on her extended leave to take the position. . . .  Koch Foods filled an open position in Accounts Payable with an employee far more qualified than Freeman to hold such a position."); *id.* ("[T]he undisputed facts show that . . . Nichols was substantially more qualified for the position . . . .").

### a.  The Moving of Freeman's Belongings from Her Desk

Koch Foods contends that Freeman cannot state a prima facie case of retaliation based upon the moving of Freeman's belongings from her desk because such a decision does not constitute adverse employment action.  (Doc. # 42, at 20).  It is unclear whether the more lenient *Burlington* standard for adverse employment actions in Title VII retaliation claims also applies to FMLA retaliation claims.  *See Foshee v. Ascension Health-IS, Inc.*, 384 Fed. Appx. 890, 891 (11th Cir. 2010) ("Prior to *Burlington Northern*, we held that in order to show an adverse employment action, 'an employee must show a serious and material change in the terms, conditions, or privileges of employment.' However, we have not addressed whether the 'materially adverse effect' standard articulated in *Burlington Northern* should apply to claims of FMLA retaliation.  However, it is unnecessary for us to decide whether *Burlington Northern* applies in FMLA retaliation cases . . . .").  However, even under the previously-articulated *Burlington* standard for adverse employment action, it is clear that no reasonable jury could find that

the removal of an employee's belongings from her desk while she was on leave, to make room for another employee, would dissuade a reasonable employee from exercising her statutorily-protected FMLA rights.  This is just such a petty and trivial action that is insufficient to establish an adverse employment action.  As such, Koch Foods' motion for summary judgment is due to be GRANTED as to Freeman's FMLA retaliation claim stemming from the removal of her belongings from her desk.

### b.  Harden's Accounts' Payable Position

Similarly, even under the more lenient *Burlington* standard, no reasonable employee would be dissuaded from exercising her statutorily-protected rights under the FMLA by an employer filling a position that comes open while the employee is on leave, particularly when the employee had not previously expressed any interest in being transferred to that section.[15]  Thus, Koch Foods' motion for summary judgment is due to be GRANTED with respect to Freeman's FMLA retaliation claim relating to Harden's Accounts Payable position.[16]

---

[15]  Following Freeman's logic, an employer would be unable to fill any position while an employee is on FMLA leave on the off chance that the employee would be interested in it. This Court notes that the FMLA does not even require that an employee be reinstated to her *same* position after her FMLA leave ends.  *See* 29 U.S.C. § 2614(a)(1) (allowing an employee to be reinstated to an "equivalent position").  Requiring an employer to leave open any particular position while an employee is on FMLA leave is an even more drastic measure, which the FMLA does not require.

[16]  In the alternative, this Court finds that Freeman has failed to rebut Koch Foods' legitimate, nondiscriminatory reason for the challenged action—namely, that Freeman was not given the position because it came available while she was on leave and because she had not requested a position in Accounts Payable prior to this time.

### c. *Haats' Accounts Payable Position*

Similarly, with respect to Haat's Accounts Payable position, even if Freeman can establish a prima facie case of retaliation, Koch Foods has presented evidence of a legitimate, non-discriminatory reason for its employment decision—namely, that Haats was more qualified for the position and had, in fact, been training for it.  Even assuming that Campbell expressed disbelief at Freeman inquiring about the position so soon after returning from leave, such evidence fails to establish that the proffered reason was false and that discrimination was the real reason for the employment decision.  The undisputed evidence before this Court is that Haats had been specifically training for the Accounts Payable position and had, in fact, already filled that position when Freeman inquired about it.  Freeman herself admits that Haats notably had more Accounts Payable position.  As such, Freeman has failed to present sufficient evidence of pretext, and Koch Foods' motion for summary judgment is due to be GRANTED as to the FMLA retaliation claim regarding Haats' Accounts Payable position.

### d. *The Benefits and Payroll Clerk position*

With respect to the Benefits and Payroll Clerk position, even if Freeman can establish a prima facie case of retaliation, Koch Foods has presented evidence of a legitimate, non-discriminatory reason for its employment decision—namely that Nichols was more qualified than Freeman for the position.  The undisputed evidence before this Court establishes that position consisted of processing payroll and benefits for 700 to 800

employees and that Freeman had no experience in the processing of payroll and benefits. As before, Campbell's alleged earlier statement about Freeman seeking a raise so soon after taking leave does not point to any weaknesses, implausibilities, or inconsistencies in Koch Foods' proffered reason.  As such, Freeman has failed to establish that Koch Foods' proffered reason is false and that retaliation is the real reason.  Therefore, summary judgment is due to be GRANTED to Koch Foods on the FMLA retaliation claim regarding the Benefits and Payroll position.

### iii.   Constructive Discharge

Constructive discharge under the FMLA follows the same standard as Title VII constructive discharge claims.  *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1275, 1284 (11th Cir. 1999) (per curiam) (affirming the grant of summary judgment in favor of the employer "based upon the holding and the rationale contained in the district court's" order, which held that a constructive discharge under the FMLA requires a plaintiff to "demonstrate that [her] working conditions were so intolerable that a reasonable person in [her] position would be compelled to resign") (citations omitted). Again, Freeman has failed to meet this high burden, and Koch Foods is entitled to judgment as a matter of law with  respect to the FMLA constructive discharge claims.  As there are no remaining FMLA claims, Koch Foods' motion for summary judgment is due to be GRANTED as to all of Freeman's FMLA claims.

### D.  The ADA Discrimination Claims

The ADA prohibits employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Thus, the ADA prohibits "a broad variety of adverse employment actions, whenever those actions are taken for a prohibited reason."  *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996).  Again, where a plaintiff relies on circumstantial evidence of discrimination under the ADA, courts apply the familiar *McDonnell Douglas* burden-shifting analysis.  *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004).  "In order to establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate that she (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability."  *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).  In her response to the motion summary judgment, Freeman the following acts of ADA discrimination in: (1) the hiring of Connie Little as a Receiving Clerk; (2) the denial of the Benefits and Payroll Clerk position; and (3) her alleged constructive discharge based, in part, upon the alleged email disclosing her medical diagnosis.  (Doc. # 49, at 15).

### i.  Little's Receiving Clerk position

As previously discussed, Freeman's Complaint, (Doc. # 1), makes no mention of Little, the Receiving Clerk position, or Freeman being denied this position.  As a plaintiff may not amend her complaint through argument made in opposition to a defendant's motion for summary judgment, *see Gilmour*, 382 F.3d at 1314, Koch Foods is entitled to judgment as a matter of law as to this claim.  As such, Koch Foods' motion for summary judgment is due to be GRANTED with respect to the ADA discrimination claim pertaining to Little's Receiving Clerk position.

### ii.  The Benefits and Payroll Clerk Position

Again, assuming Freeman establishes a prima facie case of ADA discrimination, Koch Foods has presented a legitimate non-discriminatory reason for hiring Nichols into the Payroll and Benefits Clerk position—*i.e.* that Nichols was more qualified and Freeman had no experience in the *processing* of payroll and benefits.  As with the Title VII discrimination and FMLA retaliation claims, Freeman has failed to point to any evidence which demonstrates that this reason is false and that discrimination was the real reason.  As Freeman has failed to meet this reason head on and rebut it, Koch Foods' motion for summary judgment is due to be GRANTED with respect to Freeman's ADA discrimination claim regarding the Benefits and Payroll Clerk position.

### *iii.* The Constructive Discharge Claim

As with Title VII and FMLA constructive discharge claims, a plaintiff alleging an ADA constructive discharge claim must establish that the "employer made his working conditions so intolerable that he was forced to resign. *Holbrook v. City of Alpharetta*, 911 F. Supp. 1524, 1542 (N.D. Ga. 1995) (citing *Buckley v. Hosp. Corp. of Am., Inc.*, 758 F.2d 1525, 1530 (11th Cir. 1985)).  As previously discussed, Freeman has failed to meet this high burden.[17]  Thus, Koch Foods is entitled to summary judgment with respect to Freeman's ADA constructive discharge claim.  As there are no remaining ADA claims, Koch Foods' motion for summary judgment is due to be GRANTED as to all of Freeman's ADA claims.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1. The Alternative Motion for Leave to Amend [the] Complaint, (Doc. # 64), is DENIED as MOOT;

2. Koch Foods' Motion for Partial Judgment on the Pleadings, (Doc. # 40), is GRANTED with respect to the ADA harassment claims and DENIED as MOOT with respect to the constructive discharge claims; and

---

[17]  Even if Matthews, Freeman's supervisor, sent out the email to Koch Foods' employees disclosing Freeman's diagnosis with breast cancer, Freeman has failed to demonstrate how this would make her working conditions intolerable that a reasonable employee would be compelled to resign.  Indeed, this Court finds that no reasonable employee would feel compelled to resign based upon an email to fellow employees disclosing a breast cancer diagnosis.

3.  Koch Foods' Motion for Summary Judgment, (Doc. # 41), is GRANTED; and

4.  The Clerk of the Court is DIRECTED to remove the above-styled case from the trial docket.

The Court will enter a separate final judgment consistent with this Memorandum Opinion and Order.

DONE this the 31st day of March, 2011.

                                 /s/ Mark E. Fuller
_____
CHIEF UNITED STATES DISTRICT JUDGE